UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

USA

v.

MICHAEL FOWLER

FILED
US OFFICE

5 - 2 - 5   P 2: 47

US DISTRICT COURT
DIST OF MASS

INDICTMENT NO.
# 2004-10308JLT,

DEFENDANTS MOTION
TO DISMISS FOR DOUBLE JEOPARDY
FOR ALL COUNTS OF INDICTMENT

1.0    The defendant moves, pro per, to
dismiss this indictment as to all Counts
as for double jeopardy and in violation of
the defendant U.S. Constitutional rights.

2.0    The defendant looks to _Haines v. Kerner_
404 US 519-20 (1972), that the defendants
motion herein, Should be (held to a less Stringent
Standards than formal papers drafted by lawyer)
Cf. n. 2714, Georgetown Law Journal '2003., and
See _US v. Mosquera_ 845 F2d. 1122, 1124-25 (1st cir 1988)
(not unduly conclusory), that the defendant
requests if this motion is inadequate, that
it be treated as a functional equivalent.

3.0    And, citing _Johnson v. Avery_ 393 US 483, 485
(1969) Right of defendants access to the courts
May not be denied or obstructed); n. 2743,

page 1 - 23.

All Rights Reserved

— Cf. Georgetown Law Journal '2003 ed.

4.0    The defendant argues that he is under
a Federal Indictment in the District of Maine
#2004-09-Bw, and been detained since
his arrest in the District of Massachusetts
on January 22d, 2004.

5.0    The defendant was indicted in Maine
(#2004-09-Bw), on _____ 2004, on two
Counts. The government made discovery
per Fed. Rule Crim. P. 16, (partial disclosures) of
Jenks & Giglio materials as required.

6.0    On January 22d, 2004, in the District
of Massachusetts, the (ATF) executed a
Search Warrant ('Case No. 04-51, dated on
January 22d, 2004 at 3:03pm, before, Collings, MJ.)
and described as (discovery, paper no.
58-86, Maine Dkt. 04-09-Bw), Same as (paper
no. 341-386, and # 473, approxiamate pages)

7.0    The Maine Case is still pending. (04-09-Bw, D.Me.)

8.0    On September 29th, 2004, the Federal
Grand Jury returned a Eight Count Indictment —

- in the District of Massachusetts, # 2004-
103080 JLT.,

9.0      The discovery in Maine, is the same
in substance, as disclosed in Massachusetts,
thus, Subjecting the defendant to Multiple
prosecution(s) in two Seperate Districts, for
The Same Substance.

10.0      The defendant asserts that, and
Objects to being Subjected to Multiple
vindictive governmental political prosecutions
for the Same Substantial acts. In, title
18 USC § 3661; and U.S.S.G. § 1B1.3 (a)(2)
("That the Court is required of the Sentencing
Judge to Consider "all acts or omissions...
that were part of the Same course of Conduct
or Common Scheme or plan as the offense
of Conviction".) Therefore, Subjecting
the defendant to double Conviction(s), and
Sentencing, and possible Consecutive
Sentence terms thereof,. (i.e.. Jeopardy)

10.1      The defendant Claims that the
Federal Guidelines provide that Criminal -

10.1  _Cont'd:_

— Conduct related to the Conduct of
Conviction be brought to the attention of
the judge by the Probation Department,
and that the judge Shall adjust a
Sentence for relevant Conduct, whether,
the prosecutor makes the request or not,
( 18 § 3661; USSG § 1B1.3(a)(2) )

10.2    Thus, in 18 § 3661[n.2], regardless of
the use of Sentencing under the USSG,
the defendant is Still unequivically exposed
to double jeopardy in either System of
a determinate[n.1] Sentencing regime, or by
a indeterminate Sentencing regime in and
Strictly under the U.S. Code Statute of
the offense of Conviction(s), and if the
USSG is found not binding effect, the
judge Should avoid Sentencing in a
determinate[n.1] Sentencing regime - scheme,
to a more Severe Sentence to Steer Clear
of any Claim of Vindictiveness, See in
_North Carolina v. Pearce_ 395 US 711 (1969),
and related Cases, discussed in _Wayne,_
_Lafave, Jerold Isreal & Nancy King_, 5 Criminal
Procedures § 26.8 (2ed. 2000 & Supplement)
(WestLaw database _CRIMPROC._).

_____

n.1, See page 5. for Cite.
n.2, See page 5, for Cite.

11.0   The defendant claims, asserts, the government is well aware of governmental policy agianst multiple prosecutions for the Same underlying conduct, Same scheme, Same plan, objective, See US.v. Cotton 231 F3d. 890, 909-10 (4thCir 2000) (Charging Seperate Counts - - in furtherence of a overall scheme.)

11.1   And, for Double Jeopardy citing Ball v.US 470 US 856, 862 (1985) (Cumulative punishments for convictions - - barred because Congress did not intend to create duplicative punishments for persons falling within overlap of Statute.); and see, US v. Shea 211 F3d. 658, 673 (1st Cir2000) (Cumulative punishments barred - - - despite each involving elements that other does not because Congress did not intend to inflict multiple punishments.); other Circuits (Same).

CASE CITE - NOTE

n.1.   Williams v. New York 337 US 241 (1949). (Indeterminate-Sentencing Regime).

n.2.   In Support with citing 18 3661, citing 28USC 3944 et Seq. and i.e... 944(a)(1).

12.0    The defendant asserts that the
government (Dept. of Justice), that claims
to be one Sovereign, persuing dual prosecutions
is Contrary - Conflict with Dual Prosecutions
and Successive Federal Prosecutions Policies,
in Petite v. US 3d US 529, 530-31 (1960); describing
Mechanics of petite policy, see United States
Attorney Manual 9-2.031 (2000).

12.1    In Support of the defendants allegation
of a "Sham Prosecution", as in Bartkus v. Illinois
359 US 121, 122-24 (1959), but in Heath v. Alabama
474 US at 88 the Supreme Court held that
two entities Seeking to prosecute a deft.
for the Same Criminal act must (Combined,
with Maines prosecution and application of
title 18 USC 3361 [n.2] ) be Seperate Sovereigns
that derive their authority from distinct Sources
of power. See US v. Sewell 252 F.3d. 647, 651
(8d. Cir. 2001) (Crucial determination is whether two
prosecuting entities can be termed seperate
Sovereigns) and for two distinct derived
authority to punish from distinct Sources of
power, See US. v. Sanchez 992 F.2d. 1143, 1149-50
(11th. Cir 1993) ( inquiry).

12.2    Here, applying the Department of P-

page 6 / 23.

12.2 <u>Cont'd:</u>   Justice, Office of the United States Attorney General in the District of Maine to the District of Massachusetts.

Thus, a Federal prosecution following a prosecution of the same in two seperate offices, branches, are the same entity, under the same Sovereign Color of Flag State Violate Double Jeopardy Clause as the entities do not arise from seperate sources of power, inherent power and federal Constitution. Similar, in the case of, <u>Waller v. Florida</u> 397 US 387, 394-95 (1970) (political Subdivisions of State regarded as Subordinate governmental instrumentalities of State, not Seperate Sovereigns.), here, the defendant is referring to the clear entity relationship between the federal government and its Departments, Districts in Territories, Such as District of Maine and District of Massachusetts, and the Dept. is the Dept. of Justice (D.O.J.), and federal government is the UNITED STATES OF AMERICA.

12.3    See 397 US at 393-94 (1970), (prosecution in U.S. District Court barred subsequent prosecution in Territorial (District) Court because both are –

page 7/<u>23</u>.

12.3 Cont'd:
-arms of the Same Sovereign.) The District of Columbia Circuit has indicated that defendants are entitled to protections from double jeopardy in the case of successive prosecutions by the Dist. of Columbia and federal governments, ref. to U.S v. Sumler 136 F3d. 188, 191 (DC, Cir 1998), Similar in U.S. v. Hodge 211 F3d. 74, 78 (3d.Cir 2000) (Federal and Virgin Islands govt's constitute one sovereign).

13.0       The defendant asserts that federal authorities may not manipulate a system to achieve the equivalent of a second prosecution, citing Bartkus v. Illinois 359 US 121, 122-24 (1959). And, Brown v. Ohio 432 US 161, 169 (1977), (Double Jeopardy bars successive prosecutions by the same State); Here as the Dept. of Justice.

14.0       Therefore, the defendant claims, asserts, that the Double Jeopardy Clause of the 5th Amendment of the U.S. Constitution guarantees that no person 'shall' be subject for the same offense to be twice put in jeopardy of life or limb, prison sentences and criminal fines. See Jeffers v. US 432 US 137, 155 (1977), and

14.0 Cont'd: the Fourteenth Amendment of the US Const.
applies to the States prosecutions; and
Ex parte Lange 85 US (18 Wall) 163, 168-69 (1873)
(applies to every indictment.)
          The jeopardy attaches at original
indictment, see US v. Vavlitis 9 F 3d. 206, 210
(1st Cir 1993).[n.3], and Second jeopardy would
apply to any Superseding indictments.

14.1          And, as applied here as the defendant
is put at jeopardy in Maine (#04-09-BW),
and double-jeopardy in Mass (#04-10308JLT)
as for prosecuting the Same conduct subject
to jeopardy in (#04-09-BW), and vise-versa,
universally.

14.2          The defendant, asserts, that the
Dist. of Mass. (#04-10308JLT), prosecution
event un-folded on January 22 2004,
though, while fully being prosecuted in —

CASE CITE NOTE

n.3.     US v. FOWLER #04-09-BW (1st. Cir: Dist. Me. Feb. 2004),
and US v. FOWLER #04-10308JLT (Dist. Mass. Sept. 2004)

page 9/23.

14.2 cont'd:

in Maine (#04-09-B.W), that Mass.
(#04-10308 JLT), never brought
charges until September 29' 2004,
Via Direct Indictment.

Now up into June 24'2004, referring
to Blakely v. Washington, decision, the
government Could have prosecuted any
any un-charged Conduct, offenses,
through, the PSI-Report, Which would
have enhanced a defendants Sentence
range upward in the applicable
USSG (United States Sentencing Guidelines).

14.3

Now in June 24 th' 2004, the Fanfan
Case, Was Sentenced in the District of
Maine, not considering relevant Conduct,
not charged in his indictment, ect...
Leading to Subsequent appeals, and
to the unknown results.

14.4

Thus, prompting the District of
Massachusetts to pursue prosecution
When the government had adequate
Charges to bring forth with Indictments -

14.4 <u>Cont'd:</u> On, or Soon their after January 22'2005, arrest, rather, Chose to Waite a period of Eight (8) months, to obtain Eight (8) Count Seperate Indictment (#04-10308JLT-1-8), Compared to the Maine Indictment of two (2) Counts.

15.0    Further, the defendant, even, Claims, that in (#04-10308), Counts (5) and (6) unconstitutinal as applied to the defendant, as the government Claims, that the defendant is a Felon.
    And, Claims that per charges of Violating Title's 26 USC 5861(d) and 26 USC 5861(f), of Possession and Making Unregistered firearms.
    See <u>Grady V. Corbin</u> 495 US 508, 110 S.Ct. 2084 (1990), and See Similar case of U.S v. Kurt 988 F 2d. 73 (1993) (9th Cir-Appo).

15.1    Now 26 USC 5861(d), does not allow the registrations of a firearm, that is illegal to possess, therefor, the defendant (FOWLER), Could not have registered Some firearm possessed or made, unless it was-

15.1 Cont'd: owned prior to ~~May 19, 1986~~ October 22' 1968, when
title 26 USC ~~924~~ (d) became effective,
eventhough, here, (Fowler), is not even
charged with 18 USC 922(g)(1), defined in
18 USC 921(a)(3)(C) (any firearm, muffler or
firearm silencer), a term "firearms", includes
a Silencer, ect... Same as § 921(a)(24)
defining a Silencer, as a firearm.

Penalties for, § 921(a)(3)(C), definition
of (a) Silencer, Same in § 921(a)(24), would
turn to a felon possession, in § 922(g)(1),
and penalties of § 924(a)(1) or (a)(2),
which require that: 1.) (FOWLER) be a
felon, and either Ship, transport,
or receives a firearm defined in
§ 921(a)(24) and 921(a)(3)(C), which is
in active movement in interstate
Commercial activity, or possessed in,
the Same, or affecting the Same.

15.2                But, Rather the government had
chosen to charge 26 USC 5861(d),
"possessed or received un-registered
firearm", defined in 26 USC 5845(a)(7)
and penaltie of 26 usc 5871.

15.2 <u>Con'td:</u>

And, 26 USC 5861(f), to "make a firearm, in violation of this provision", defined in 26 USC 5845(m) "Manufacture", engaged in the Business of Manufacturing firearms, and firearm, defined in §5845(a)(7), as defined in 18 USC 921(a)(3)(c) and 921(a)(24), and Penalties in §5871.

15.3
   This would require one to be Registered Manufacturer of firearms, in 26 USC 5802 (Registrations), Subchapter A, of title 26 et seq. is applicable, thus, one who manufactures a firearm, violates 26 USC 5802 by not being registered, and cf 5822 (Making) "No person shall make a firearm unless he has", complied with (all) provisions "(a) - (e)", however, §5822(e) cf, "Application's shall be denied if the making or possession of the firearm would place the person making or possessing in violation of the law." Added (Pub. L. 90-618, Title II, §201. Oct. 22 '1968, 82 Stat. 1228, and amended Pub. L. 94-455, Title XIX, § 1906(b)(13)(A), Oct. 4, 1976, 90 Stat. 1834.)

   Therefore, §§ 5861(d) and (f) would not be applicable as applied -

15.3 <u>contd:</u> to one whee is prohibited from registering a <u>firearm</u>, and also would be prohibited, from being a registerd manufactre of <u>firearms</u>, defined, as mentioned herein.

And the National Firearms Act of 1968 (NFA), specifically provides that all applications to register a firearm will be <u>denied</u> if it is illegal to ~~possess~~ or ~~transfer~~ the ~~weapon~~. 26 USC 5822(e), as in 5586(f), and Same in 5586(d)

Consequently, Compliance with the requirements of 5845 et seq. (i.e.. 5586(d) & 586(f)), is impossible for any <u>firearm</u>.

15.4 Though, prosecution could have proceeded under 18 USC 922(g)(1), but the government made a Clear choice to proceed under 26 USC 5861(d) and (f) by indictment.

15.5 In <u>US v. Dalton</u> 960 F2d 121 (10th Cir 1992) the Court vacated a conviction under 5861(d) on the grounds that no Constitutional basis for the registration requirements, which were passed for the —

Con't'd:

15.5    – purpose of aiding the ~~registration~~ taxing function
        requirements, existed after the
        enactment of 18 USC 921(a)(3)(C), and
        922(a)(24), defined Silencer's as a
        firearm, and 3922(g) would be applicable
        In Dalton, the Court favorably Cited
        US v. Rock Island Armory, Inc. 773 F. Supp. 117
        (C.D. Ill. 1991.), "as the court agreed
        with the reasoning in Rock Island Armory
        that because the registration requirements
        of the (NFA) National Firearms Act of 1968,
        were passed pursuant to the taxing power,
        i.d. at 119, and because after the
        enactment of 18 3921 et seq, in 1968,
        the government will no longer register or
        tax machineguns (Firearm), i.d. at 118,
        title 18 USC 921 et seq. has removed the
        Constitutional legitimacy of registrations as
        an aide to taxation", i.d. at 125,

15.6            And, thus, 3 921 et seq. undercuts
        the Constitutional basis of registrations
        which had been the rule Since Sonzinsky
        300 US 506, 81 LEd. 772, 57 Sct. 554 (1937) -;
        Dalton 960 F.2d. at 124-125.

15.7

The Dalton Court also looked favorably upon an argument challenging the fundamental fairness of the conviction:

Because the crimes of which Dalton was convicted of, have as an essential element of his failure to do an act that he (Dalton) is incapble of performing, his fundamental fairness argument is persuasive". Cf. US v. Spingola 464 F.2d. 909, 911 (7th Cir-1972); cf. [*7] 1 W. Lafave & A. Scott, Jr. Substantive Criminal Law § 3.3(c) at 291 (1986), that, " One cannot be criminally liable for failing to do an act which he (FOWLER) is physically incapable of performing."

15.8

Here (FOWLER) challenges the Constitutionality of 26 USC 5861, as applied to him, as he can assert, that possession in § 586(d) and making the same firearm defined in 18 § 921(a)(24) and § 921(a)(3)(C); 26 5845(a)(7), defining (a) Silencer which was possessed, was manufactured and possessed after September 13 2001, the release date of (FOWLER) from the Dept. of Corr. in Mass. after five years.

15.9    And, Since no evidence is Shown to actually when the defendant (Fowler) had possessed and manufactured a defined firearm, for violation of 5861(d) and (f), and no evidence to support 18 USC 922 prosecution, but none the less 26 USC 5861 (d) & (f), are indeed to be unconstitutionally applied to the defendant and Shall require that Counts 5 & 6, to be dismissed, and be barred from Subsequent jeopardy of a re-prosecution of the Same matter.

16.0    Note - the government has Shown no evidence that the defined firearm is capable of being registered and being a person who qualified to be applicable to registration as a manufacture.

16.1    The Double Jeopardy Clause bars a Second prosecution once jeopardy attaches when the deft. faces the risk of determination of guilt, cf. n. 1348-50. Georgetown Law Journal 2003 ed., citing Ex parte Lange 85 US (18 Wall.) 163, 168-169 (1873); n. 1349, See Serfass v. US 420 US 377, 391-92 (1975) but see in ―

16.1 <u>Cont'd:</u>   US v. Vavlitis 9 F3d. 206, 210 (1st. Cir 1993),
(jeopardy attached at original indictment);
n.1350, <u>Crist v. Bretz</u> 437 US 28, 29 (1978),
n.1351, and it attaches in a bench trial
when the judge begins to hear evidence,
See <u>Serfass</u> 420 US at 388.

17.0           This is not too mention several
other issues of "from even the risk
of being punished twice for the same
offense", n.1379, Cf. Georgetown Law Journal
'2003 ed., See <u>Abney v. US</u> 431 US 651, 660-62
(1977); "the extraordinary proliferation of
overlapping and related statutory offenses,
it became possible for prosecutors to
spin out a startlingly numerous series of
offenses from a single alledged criminal
transaction", See in <u>Ashe v. Swenson</u> 397
US 436, 446, n.10 (1970); barring a different
prosecution theory, see <u>Piaskowski v. Bett</u>
256 F3d. 687, 694-95 (7th Cir 2001); <u>US v. Miate</u>
16 F3d. 1101, 1106 (10th Cir 1994) (Successive
prosecutions in different states, barred
because both are interdependent.)

17.0 *Cont'd:*

and ( Should have been charged with only one violation per violated provision.) and when Congress will is not declared the courts will follow the 'rule of lenity' and assume only a single punishment. See *Bell v. US* 349 US 81, 83 (1955).

18.0     However, at least, a definite Claim of " *Collateral Estoppel* ", could be raised here in this indictment (#04-10308 JLT) against the defendant ( FOWLER), as if the *Blockburger* test for Separate offenses, and double jeopardy Claim is rejected, *Ashe v. Swenson* 397 US 436, 444-45 (1970), n. 1397, cf. Georgetown Law Journal '2003 ed., *Ashe* at 446 ; and contrary to the opposite of *Ohio v. Johnson* 467 US 493, 500, n.9 (1984), here, the government has indeed made overt acts to prosecute ( FOWLER) in (#04-09-BW), with discovery of Same evidence as subsequently in (#04-10308 JLT) as relevant conduct in 1833553 and the use of a PSI Report.

page 20 / 23.

17.0 <u>Cont'd:</u> And, the overlapping of Statute, in
26 § 5861(d) and (f), as in the
Manufacturing and possession of
the same item. See <u>Ball v. US</u> 470 US
856, 862 (1985) (punishment for possession
and reciept but felon barred); and
in <u>US v. Shea</u> 211 F3d. 658, 673 (1st Cir 2000)
(Cumulative punishments barred in firearm
possession, and being drug user in
possession of firearm - -no intent to
inflict multiple punishments"); making
multiple charges constitutes same offense,
in <u>Blockburger v. US</u> 284 US 299, 304
(1932); <u>Hunter</u> 459 US at 367-68 (1983),
n. 1393 and n.1394, in Georgetown Law
Journal 2003.; citing n. 1396 cf.
Case of <u>US v. Universal C.I.T. Credit Corp.</u>
344 US 218, 221 (1952) (the trial Court
should treat as one offense all
Violations that arise from that singleness,
of thought, purpose, or action which
may be deemed a single impulse"),
as one could speculate that one
could not possess, without the
manufacture of same item first? ??

page 19 / <u>23</u>.

18.1  The defendant can claim Collateral Estoppel doctrine and saving judicial economy, citing _Ashe_.

19.0  And, as to _MULTIPLICITOUS COUNTS_, in the indictment. In _US v. Rodriguez_ 858 F.2d. 809, 816-17 (1st Cir. 1988) here defendant (FOWLER), asserts a claim before trial that Counts 2-4, are Multiplicitous with Count 1, and Count's 5-6, are multiplicitous, as Counts 7-8, are the same; as asserted defendant not at bar in later Consideration of Claim. All Rights Are Reserved there to.

19.1  The defendant, moves, the Court to address the issue of Multiplicitous Counts, that may be at bar.

19.2  The defendant here has made a timely motion and prima facie, non-frivolous showing of jeopardy. See

19.2 <u>Cont'd:</u>

- In <u>US v. Booth</u> 673 F.2d. 27, 30-1, (1st. Cir. 1982), defendant has pointed out... substantial overlaps in multiple counts in (#04-10308).

19.3 And, the government must prove that the offenses, (Count 1-8), are charged is not the same one for which the defendant was formerly (is) placed in jeopardy. (In overlaps in #04-10308) and (multiple counts 1-8, in #04-10308, compared with #04-09-BW), by a preponderance of the evidence.

20.0 The defendant reserves the right to appeal, and <u>makes pre-appeal notice, of appeal</u>, as he may immediately upon the denial of this pretrial double jeopardy motion. See <u>Abney v. US</u> 431 US 651, 662 (1977), established in <u>Cohen v. Beneficial Indust. Loan Corp.</u> 337 US 541 (1949), and <u>Abney</u> 431 US at 663; <u>US v. Keene</u> 287 F.3d. 229, 232 (1st Cir 2002).

20.1 Defendant, further, does not waive right to relitigate of double jeopardy later in the proceedings. <u>US v. Stricklin</u> 591 F.2d. 1112, 1119 (5th Cir 1979); and

20.1 _Cont'd:_

The defendant reserves the right to relitigation of any jeopardy, and or double jeopardy, multiplicitous charges, in future proceedings, hereafter.

21.0 The defendant reserves the right to AMEND and or SUPPLEMENT, this MOTION, at any time hereafter.

21.1 The defendant does not have the means availible to make service upon the government; as such, the Court, can make service by ECM System upon docketing this motion, or other means.

21.2 The defendant, has made filing here, by pre-paid, U.S. Mail, by Penobscot County Jail Inmate Legal Mail System this day May 27th '2005.

Mail To: Michael Fowler
Fed. ID #18644-038
c/o 85 Hammond Street
Bangor, Maine 04401

page 23 / 23.

Respectfully Submitted

X
MICHAEL FOWLER
DEFENDANT, PROSE

Date: May 27, 2005.

All Rights Reserved.